# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist RILEY W. COLLIER**
**United States Army, Appellant**

ARMY 20160447

Headquarters, Fort Carson
Lanny J. Acosta, Military Judge
Colonel Gregg A. Engler, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major Cormac M. Smith, JA; Major Ian M. Guy, JA (on brief).

3 August 2017

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curium:

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error, questioning his pleas of guilty to obtaining services under false pretenses because the services obtained had no value. We hold that the military judge did not err in accepting appellant's guilty pleas to obtaining services under false pretenses because appellant admitted in his plea inquiry that the subject of his wrongful obtaining, "lines of credit," did in fact have value.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of violating a lawful general regulation and four specifications of obtaining services under false pretenses, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge and 120 days of confinement.

Appellant was in financial distress. While serving on staff duty, appellant used his position to access the social security number and other information of fellow soldiers. Appellant then used that information to sign up for credit cards. Although the credit cards were delivered to appellant, in the end, appellant never used the credit cards. For this conduct appellant was charged and pled guilty to four specifications of theft of services. Specifically, the offense stated that, "with intent to defraud" appellant used false pretenses to obtain "lines of credit."

On appeal, appellant's sole assignment of error is that appellant cannot be guilty of theft of services because "the services had no value." Appellant relies on this Court's opinion in *United States v. Sierra*, 62 M.J. 539 (A.C.C.A. 2005) for support.

In *Sierra* the accused pleaded guilty to using Priceline.com to purchase airline tickets using a government issued credit card. *Id.* at 540-41. In addition to offenses relating to his improper use of the credit card, the accused in *Sierra* pleaded guilty to stealing the services of Priceline.com. *Id.* Specifically, the service of bidding on airline tickets on Priceline.com. *Id.*

In *Sierra* we found that the record of trial did not disclose any evidence that the right to bid on airline tickets at Priceline.com was anything other than free. *Id.* at 543-44. That is, the *Care* inquiry did not establish that the services that were stolen had any value. Accordingly, we found a substantial basis in fact to question the providence of appellant's plea and set aside the conviction. *Id.*

Although the assignment of error in this case is cast as an issue of value, the core of the parties' argument revolves on the axis of the services obtained. Appellant focuses on the services provided by processing and extending the credit application, whereas the government focuses on the services obtained being the credit line itself. Indeed, it is at the juncture of defining the wrongfully obtained service, rather than the juncture of value, that the proverbial train has left the station.

If we agreed with appellant that the services which were wrongfully obtained were the processing of the credit application then we would also agree that just as in *Sierra* the military judge failed to establish the value of any such services on the record. Indeed, as appellant points out, there was no evidence of the "nominal cost attached to the application process." However, appellant was not charged with and did not plead guilty to wrongfully obtaining services, to wit: the processing of credit applications. Appellant pleaded guilty to wrongfully obtaining "lines of credit." The service at issue in this case is not the service of "obtaining a line of credit," rather the government charged the wrongful obtaining of the service of "a line of

credit." As a line of credit is a "service," and appellant admitted as much, at a guilty plea, the applicability of *Sierra's* guidance on value diminishes.

*Sierra* was a case where the *Care* inquiry did not sufficiently establish the value of the service. "While [the appellant in *Sierra*] agreed that the value of 'the opportunity' was less than $100.00, there was no evidence that it was anything other than free." *Id.* at 544. In that case, neither the stipulation of fact nor appellant actually asserted the service had a value. The sole fact concerning value was appellant admitted "the value was $100 or less." *Id.* at 541. To say something is worth less than $100 does not, in and of itself, assert that is has an actual value. Put another way, something that has no value still has a value of less than $100.

The record in this case establishes that the lines of credit had value. "Value is a question of *fact* to be determined on the basis of all the evidence admitted." *Manual for Courts-Martial*, *United States* (2012 ed.) [hereinafter *MCM*] pt. IV, ¶ 46.c.(1)(g)(i) (emphasis added). As this was a guilty plea, we need not look further than appellant's own admissions. Appellant admitted the lines of credit he stole had value. For example, the military judge asked appellant about Specification 1 of Charge II:

> MJ: Do you believe that the services had a value? What was the value of the services that you received? If you know.
>
> ACC: They were over $500.
>
> MJ: It was over $500?
>
> ACC: Yes, sir.
>
> MJ: How much was the line of credit that you were given?
>
> ACC: $3,000, sir.

Appellant then admitted that although he had received a letter from the credit card company regarding the amount of the line of credit he had never opened the letter. He did, however, subsequently review this evidence with his attorney to determine that "the line of credit was for $3,000." Similar to this specification, at each turn, appellant admitted the value of the services obtained was the monetary equivalent of the amount of the lines of credit.

When appellant argues in his brief that the "military judge abused his discretion by accepting SPC Collier's pleas of guilty . . . because there was not an adequate factual predicate that the service of obtaining a line of credit had any value" he is disagreeing with *facts* that *he admitted* at trial. *United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995) (it is appropriate to reject facts asserted on appeal that contradict an appellant's admissions during a guilty plea). More broadly, it is clear that lines of credit have a "market value." *See, e.g., MCM*, pt. IV, ¶ 46.c.(1)(g)(iii) ("As a general rule, the value of other stolen property is its legitimate market value at the time and place of the theft. . . . Writings representing value may be considered to have the value—even though contingent—which they represented at the time of theft").

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

4